## Richmond

MILTON O. THOMAS, ET AL. v. JASPER BEST, ET AL.

June 10, 1968.

Record No. 6671.

Present, All the Justices.

*Howard I. Legum* (*Fine, Fine, Legum & Fine*, on brief), for appellants.

*Montgomery Knight, Jr.; Joseph J. Lawler* (*Doumar, Pincus, Anderson & Knight; Kellam and Kellam*, on brief), for appellees.

GORDON, J., delivered the opinion of the court.

A writing purporting to be the last will of Lucy Best Dobski was admitted to probate by the Clerk of the Corporation Court of the City

of Norfolk on August 3, 1964 in an *ex parte* proceeding under Code § 64-73. On March 29, 1965 Jasper Best, Frank Best and Clara Best Buck, three of the decedent's brothers and sisters, brought this suit *devisavit vel non* under Code § 64-84 to impeach the will.

The complainants alleged in their bill that the writing previously admitted to probate was not the true will of Lucy Best Dobski and that she had died intestate. They alleged further that her estate should pass in accordance with the Virginia statutes of descents and distributions to her living brothers and sisters and the living descendants of her deceased brothers and sisters. The bill concluded with a prayer that the court empanel a jury to try the issue *devisavit vel non.*

The bill named as parties defendant the beneficiaries under the purported will, the Administrators c.t.a. and the decedent's known heirs and distributees other than the complainants. The court entered an order of publication which was executed against the nonresident defendants named in the bill and against the unknown heirs and distributees made parties defendant as Parties Unknown.[1]

On August 26, 1965, the court entered a final decree, reciting that all parties who had appeared in the suit[2] desired to settle the matters

---

[1] The decedent's brothers and sisters and the descendants of her deceased brothers and sisters, as disclosed by the pleadings in this suit, are set forth below. The names of persons who predeceased the decedent are italicized.

| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) |
|---|---|---|---|---|---|---|---|---|---|---|
| Jasper Best | Frank Best | Clara Best Buck | *Maggie Best Thomas* | Zella Best Peters | *George Best* | Edwin Best (half-brother) | *Elwood Best* | *Charles Best* | *Irwin Best* | Sarah Best Schultz |

Under *Maggie Best Thomas* (4): 5 children including Burton Thomas, Milton O. Thomas & Millard Thomas, plus one deceased child survived by 8 descendants

Under *George Best* (6): 6 children

Under *Elwood Best* (8): 5 children,

Under *Charles Best* (9): Alameda Best Gallagher

Under *Irwin Best* (10): 5 children, including Anna Katherine Best

The bill named only the first 8 brothers and sisters set forth above and certain of their descendants.

[2] The heirs and distributees who had appeared in the suit when the August 26, 1965 decree was entered were: Jasper Best, Frank Best, Clara Best Buck, Zella Best Peters, Burton Thomas and Alameda Best Gallagher. See note 1, *supra.* The bene-

in controversy on the basis to be set forth in the decree. By the decree the court:

(1) adjudged the writing that had been probated by the clerk to be the true will of Lucy Best Dobski,

(2) approved the proposed settlement as being fair and in the best interests of the estate and of all parties to the suit, and

(3) directed that, to effectuate the settlement, the estate be distributed as directed by the will, except that (a) five of the decedent's heirs and distributees who had appeared in the suit, Jasper Best, Frank Best, Clara Best Buck, Zella Best Peters and Almeda Best Gallagher (see note 2, *supra*), should each receive 6.7% of the net distributable estate and (b) the James Barry Robinson Home for Boys should accept $3,000 less than provided for it under the will. (Because 33.5% of the net distributable estate, to be paid as set forth in clause (a) above, would exceed the amount to be contributed by the James Barry Robinson Home for Boys, the settlement agreement necessarily contemplated that the difference would be contributed by Burton Thomas, the beneficiary of the residuary estate under the decedent's will.)[3]

On September 9, 1965 Milton O. Thomas, Millard Thomas and

---

ficiaries under the will who had appeared were: Burton Thomas, residuary beneficiary under the will (also an heir and distributee and one of the Administrators c.t.a.), and the James Barry Robinson Home for Boys, the devisee of all the decedent's real estate. (Certain of the heirs and distributees who appeared were given small cash legacies under the will.) The Administrators c.t.a. had also appeared.

[3] This decree, entered August 26, 1965, was erroneous for two reasons.

The court should not have probated the decedent's will on the basis of the consent of some, but not all, of the decedent's heirs and distributees. *Culpeper National Bank v. Morris*, 168 Va. 379, 191 S.E. 764 (1937), upon which the trial court apparently relied, does not support the court's action in this case. In *Culpeper* we approved the probating of a will on the basis of the consent of *all* the interested parties, that is, all the heirs and distributees and all the beneficiaries under the purported will.

Secondly, the court should not have approved a compromise agreement or directed that the decedent's estate be distributed in accordance with the agreement so approved. Such approval and direction were beyond the scope of a suit *devisavit vel non*. A suit *devisavit vel non*, though commenced by the filing of a bill in equity (Code § 64-84), is essentially a probate proceeding, governed by statute and having only one purpose: to determine whether purported wills should be admitted to probate. See *Lamb, Virginia Probate Practice* § 63, at 155 (1957).

However, no appeal has been prosecuted from the decree entered August 26, 1965, and the appellants have not contended that the decree is void as being beyond the jurisdiction of the court. We must therefore address ourselves to the issue raised on this appeal, whether an order entered by the trial court on October 19, 1966, from which this appeal was prosecuted, was erroneous.

Anna Katherine Best, none of whom had previously appeared, filed a petition in this suit pursuant to Code § 8-78.[4] Milton O. Thomas and Millard Thomas had been named in the bill filed in this suit and served by publication as parties whose addresses were unknown. Anna Katherine Best had been served as a Party Unknown.

The petitioners, Milton O. Thomas, Millard Thomas and Anna Katherine Best, alleged that they were heirs and distributees of the decedent (see note 1, *supra*) and that, as such, they were entitled to a share of her estate (valued at about $200,000) if she died intestate. They prayed that the consent decree of August 26, 1965, which had been entered without their knowledge or consent, be vacated insofar as they were concerned.

Thereafter the court permitted the petitioners to file a pleading, in which they alleged that the consent decree probating the decedent's will was unjust insofar as they were concerned. They prayed that the court reopen the suit *devisavit vel non* and empanel a jury to determine whether the writing admitted to probate was the decedent's true will. The complainants, Jasper Best, Frank Best and Clara Best Buck, and the Administrators c.t.a. filed a motion to quash and a demurrer to the petitioners' pleading.

By an order entered October 19, 1966, from which this appeal was prosecuted, the court refused to vacate the decree entered August 26, 1965 and dismissed the pleading filed by Milton O. Thomas, Millard Thomas and Anna Katherine Best, assigning these reasons: "there has been no allegation of fraud, collusion or misrepresentation in the contractual settlement and decree signed on August 26, 1965, and . . . said decree was conducive to public policy and supported by a valid consideration".

Before commenting upon the reasons assigned by the trial court for refusing to vacate the August 26, 1965 decree and for dismissing the petitioners' pleading, we will turn to a more basic argument made by the appellees for affirming the court's actions. The appellees contend that Code § 8-78 (note 4, *supra*), pursuant to which the

---

4 "§ 8-78. Any unknown party, or other defendant, who was not served with process, and did not appear in the case before the date of . . . [a] judgment, decree, or order, or the representative of any such, may, within two years from that date, if he be not served with a copy of such judgment, decree, or order, more than a year before the end of the two years, and if he be so served, then within one year from the time of such service, petition to have the case reheard, and may plead or answer, and have any injustice in the proceedings corrected." Va. Code Ann. § 8-78 (1957 Repl. vol.).

petitioners (now appellants) asked for the reopening of this suit *devisavit vel non,* is not applicable to such a suit.

The appellees say that Code § 64-86 (note 5, *infra*), not Code § 8-78, applies to an attack on a decree entered in a suit *devisavit vel non* because Code § 64-86 relates specifically to such a suit and therefore supersedes the general provisions of Code § 8-78. The appellees argue that after the court entered the August 26, 1965 consent decree probating the decedent's will, the petitioners could have instituted a suit under Code § 64-86 requesting a trial of the issue *devisavit vel non,* but had no right to petition for a rehearing in the pending suit under Code § 8-78. To deal with this contention we must examine Code §§ 64-84, -85 and -86.[5]

Code § 64-84 permits the filing of a bill to impeach or establish a will only "[a]fter a sentence or order [has been entered] under § 64-81 or under § 64-73". (Code § 64-81 authorizes a court to probate a will or reject a will from probate in an *ex parte* proceeding. Va. Code Ann. § 64-81 (1950). The court may do so either on original presentation or on appeal from a clerk's order. Code § 64-73 authorizes a clerk to probate a will or reject a will from probate in an *ex parte* proceeding. Va. Code Ann. § 64-73 (1950).)

---

[5] "§ 64-84. After a sentence or order under § 64-81 or under § 64-73, a person interested, who was not a party to the proceeding, may proceed by bill in equity to impeach or establish the will, on which bill a trial by jury shall be ordered to ascertain whether any, and if any how much, of what was so offered for probate be the will of the decedent. The court may also, if it deem proper, require all testamentary papers of the same decedent to be produced and direct the jury to ascertain whether any, or if there be more than one which, of the papers produced, or how much of what was so produced, be the will of the decedent." Va. Code Ann. § 64-84 (1950).

"§ 64-85. If the sentence or order be made by the court in the exercise either of its original jurisdiction or an appeal from the clerk, such bill shall be filed within one year from the date of such order made by the court. If no appeal be taken from a sentence or order made by the clerk under § 64-73, the bill shall be filed within one year from the date of such order or sentence by the clerk. If no such bill be filed within that time, the sentence or order shall be forever binding. No bill shall be filed under § 64-84 except in the court in which, or in the clerk's office of which, the will was admitted to probate." Va. Code Ann. § 64-85 (1950).

"§ 64-86. Sections 64-80, 64-84 and 64-85 are subject to this proviso: that any person interested who, at the time of the sentence or order, is under the age of twenty-one years or of unsound mind may file a bill in equity to impeach or establish the will within one year after he becomes of age or is restored to sanity, as the case may be, and any person interested who at that time resides out of this State or shall have been proceeded against by order of publication may, unless he actually appeared as a party or was personally summoned, file such bill within two years after such sentence or order." Va. Code Ann. § 64-86 (1950).

Code § 64-85, which designates the courts having jurisdiction to entertain suits under Code § 64-84 and prescribes the time-limitation for instituting such suits, also refers to "the sentence or order" made by the court or clerk, that is, to an order entered under Code § 64-81 or 64-73.

Code § 64-86, with which we are primarily concerned, modifies Code §§ 64-84 and -85 (as well as Code § 64-80) by permitting an interested person, who *"at the time of the sentence or order"* was an infant or of unsound mind, to bring a suit *devisavit vel non* within one year after he becomes of age or is restored to sanity, and by permitting an interested person, who *"at that time"* was a nonresident or was proceeded against by order of publication, to bring a suit *devisavit vel non* within two years *"after such sentence or order"*. (Italics supplied in quotations.) The quoted words refer back to the time of *a sentence or order mentioned in Code § 64-84*, that is, to a sentence or order entered *ex parte* by the court (Code § 64-81) or by the clerk (Code § 64-73).[6] Those words do not refer to a decree entered by a court probating or rejecting a will in a suit *devisavit vel non.*

■ The right to institute a suit *devisavit vel non* and the jurisdiction of a court to entertain such a suit do not exist independently of the statutory authorization contained in Code §§ 64-84, -85 and -86. See *Branch* v. *Branch*, 172 Va. 413, 416, 2 S.E.2d 327, 329 (1939). Nothing in these Code sections authorizes the institution or entertaining of a suit *devisavit vel non* after a court has entered a decree probating or rejecting a will in an earlier suit *devisavit vel non* instituted under Code § 64-84. So we reject the appellees' first contention and hold that Code § 64-86 did not authorize the petitioners (now appellants) to institute a suit *devisavit vel non* after the entry of a decree in this suit probating the decedent's will.

■ Furthermore, we agree with the petitioners that Code § 8-78 (note 4, *supra*) authorized them to file a petition in this suit to have the case reheard. Code § 8-78 provides that any defendant who was "not served with process" and who did not appear in a suit may petition for a rehearing within the relevant times prescribed therein. A party proceeded against by an order of publication has not been

---

[6] Because Code § 64-86 by its terms modifies Code § 64-80, the words quoted in the text refer back also to a sentence or order mentioned in Code § 64-80. The words "sentence or final order" in Code § 64-80 refer to an order probating a will or rejecting a will from probate entered in an *inter partes* proceeding (Code § 64-75 or -76).

"served with process" within the meaning of Code § 8-78. *Robertson v. Stone,* 199 Va. 41, 45, 97 S.E.2d 739, 743 (1957). The petitioners, who were so proceeded against and had not appeared in the suit, were therefore entitled under Code § 8-78 to petition the court for a rehearing.

As we have pointed out, the trial judge refused to vacate the August 26, 1965 decree probating the will and refused to grant the petitioners' request for a rehearing because the petitioners had not alleged that the compromise agreement and decree were induced by fraud, collusion or misrepresentation. The appellees contend that *Culpeper National Bank v. Morris,* 168 Va. 379, 191 S.E. 764 (1937), supports the trial judge's holding.

In the *Culpeper* case a creditor of one of the decedent's heirs brought a chancery suit in which he made a collateral attack upon a final decree admitting the decedent's will to probate by consent of all the interested parties in a suit *devisavit vel non.* We affirmed the trial court's denial of relief in the chancery suit because the complainant did not allege or prove that the compromise agreement which led to the consent decree had been induced by misrepresentation, fraud or deceit.

In this case the petitioners did not make a collateral attack upon the August 26, 1965 decree, but attacked the decree directly by filing a petition for a rehearing of the suit pursuant to a right expressly given to them by Code § 8-78. The *Culpeper* case is therefore distinguishable from this case. Code § 8-78, which permits a direct attack, does not require a petitioner to allege or prove misrepresentation, fraud or deceit as a condition to his right to a rehearing.

The appellees contend that even if the petitioners were not required to allege or prove misrepresentation, fraud or deceit, they were required to allege and prove that the entry of the August 26, 1965 consent decree effected an injustice. The appellees base this contention upon the language of Code § 8-78 that permits a court upon a rehearing to correct "any injustice in the proceedings". See note 4, *supra.* The appellees argue that because the petitioners did not allege any facts to show that an injustice had been done to them, the trial court properly dismissed their petition for a rehearing.

The August 26, 1965 decree shows on its face, however, that an injustice was done to the petitioners and to other heirs and distributees who were not parties to the compromise agreement. By the compromise agreement the parties sought to settle a suit to impeach

the decedent's will, which suit if successful would have resulted in benefits for all the decedent's heirs and distributees. But the compromise agreement provided that certain heirs and distributees, parties to the agreement, should receive shares of the decedent's estate and that the balance of her estate should be distributed in accordance with the will. (See page 105, *supra*.) The agreement was unjust because it benefited the heirs and distributees who were parties to the agreement, but provided no benefit for the other heirs and distributees.

We therefore reverse the order entered October 19, 1966 and remand the case with direction that the trial court reinstate this suit, vacate the decree entered August 26, 1965 and empanel a jury to determine the issue *devisavit vel non*, as prayed in the petition filed by Milton O. Thomas, Millard Thomas and Anna Katherine Best.

*Reversed and remanded.*